UNITED STATED DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| COX OKLAHOMA TELECOM, LLC, <br> 6301 Waterford Blvd. <br> Suite 200 <br> Oklahoma City, OK 73118 <br>                 Plaintiff, <br><br> v. <br><br> GENERAL SERVICES ADMINISTRATION, <br><br>                 Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Cox Oklahoma Telecom, LLC ("Plaintiff" or "Cox"), by and through counsel, for its Complaint for declaratory and injunctive relief against the defendant, General Services Administration ("Defendant" or "GSA"), states as follows:

**INTRODUCTION**

1. Cox brings this "reverse FOIA" action under the Freedom of Information Act ("FOIA") to prevent the unauthorized and prohibited disclosure by GSA of sensitive and confidential pricing information to one of Cox's competitors, Southern Bell Communications ("SBC").

2. In April 2004, Cox, SBC and other telecommunications providers entered into a competitive bidding process as Offerors on a contract to provide local telephone and voice information services to the federal government in Oklahoma (the "Oklahoma Service Contract" or "Contract").

3. On information and belief, in or around November 2005, Cox and SBC both submitted bids under the Contract to provide voice and data services within the Oklahoma City and Tulsa markets.

4. The service orders for federal agencies under the Contract are awarded in phases, with GSA announcing which Offeror would be awarded which federal agencies quarterly, beginning in the second quarter of 2006 and continuing through at least the first quarter of 2007 (the "Award Period").

5. During the Award Period, the Offerors would be continuously competing based on the price of their bids.

6. Pursuant to the Contract, an Offeror is permitted to resubmit a lower bid to GSA at any time during the Award Period, and that lower bid would be considered for any federal agencies that had not yet been awarded under the Contract.

7. On or around February 28, 2006, GSA informed Cox that SBC had made a FOIA request seeking to obtain Cox's pricing information under the bids for the Oklahoma Service Contract, and that it intended to provide Cox's confidentially-submitted pricing schedule without redactions to SBC.

8. Cox informed GSA by e-mail on March 1, 2006 that Cox strongly objected to GSA releasing Cox's confidential and proprietary pricing information to SBC, and requested an opportunity to respond to SBC's request.

9. GSA responded by letter on March 1, 2006 by requiring Cox to submit a written statement within seven days providing additional information regarding the records which Cox did not want released as well as the reasons why Cox believed the information should not be released.

10. Cox responded by letter on March 7, 2006, explaining, among other things, that the requested information was sensitive pricing information that was not available to the public, that the release of such information would provide SBC with a competitive advantage against Cox in that market and in other markets, and again strongly objecting to the release of the confidential pricing information.

11. On March 31, 2006, GSA informed Cox in a one-page letter, without any explanation of its reasoning or any rebuttal of Cox's points, that GSA intended to release the information in five working days. Subsequently, GSA informed Cox that it intended to disclose the information on Friday April 7, 2006.

12. GSA's March 31, 2006 correspondence did not respond to any of Cox's arguments and, in fact, didn't even acknowledge receipt or consideration of Cox's March 7, 2006 letter, which had provided the basis for Cox's objections as GSA had requested.

13. The GSA letter referred obliquely to a "U.S. Court decision dated September 7, 2001 between Sprint Communications Company and GSA that established the precedence [sic] to release the first year pricing of our telecommunication [sic] contracts of which GSA is currently following."

14. The release of Cox's confidential and proprietary pricing information is improper because such information is expressly exempted from disclosure by FOIA, the FARs and the Trade Secrets Act.

15. GSA's decision is arbitrary and capricious, and it is in violation of the Administrative Procedure Act, FOIA, the Trade Secrets Act and the Code of Federal Regulations that govern the release (or non-release) of such information.

16. The release of this confidential and proprietary pricing information will result in immediate and irreparable harm to Cox.

## PARTIES

17. Cox is a limited liability company doing business as a subsidiary of Cox Communications, Inc. Cox Oklahoma Telecom, LLC does business throughout the State of Oklahoma and has its principal place of business in Oklahoma City, Oklahoma.

18. GSA is an agency of the government of the United States of America which resides in Washington, D.C. GSA is responsible for serving federal agency needs through acquisition of products and services.

## JURISDICTION AND VENUE

19. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws or treaties of the United States.

20. This Court has personal jurisdiction over the defendant, GSA.

21. Venue is proper in this Court pursuant to 28 U.S.C. 1391(e) because the defendant resides in the District of Columbia.

## GENERAL ALLEGATIONS

I.    **The GSA Bidding Process for Oklahoma Markets.**

22. In April 2004, GSA began soliciting competitive bids for the provision of telecommunications services, including voice and data services, for the United States Government in the Texas, Oklahoma and Arkansas markets.

23. In or around November 2005, in response to GSA's solicitations, Cox submitted bids to provide voice and data services within Oklahoma in the Oklahoma City and Tulsa markets under Contract GS07T06BGD0003.

24. On information and belief, in or around November 2005, SBC, a subsidiary of AT&T Corporation ("AT&T"), also submitted bids in the Tulsa and Oklahoma City markets.

25. SBC and Cox are major competitors for the provision of local voice and data services in the Oklahoma markets and across the nation.

26. Under the provisions of the Contract, the various federal agencies included in the Contract would be awarded in phases, with different portions of the Contract being awarded each quarter, beginning in the second quarter of 2006 and continuing through the first quarter of 2007.

27. During the second quarter of 2006, GSA awarded a small number of federal agencies for which the parties had placed bids for required telecommunications services under the Contract. Most of the federal agencies under the Contract have not yet been awarded, and are therefore the subject of ongoing competition.

28. As is typical with public works bidding processes, the bids are non-public, sealed bids that are not disclosed to competing Offerors.

29. Each federal agency awarded under the Contract is awarded to the Offeror who offered the lowest service price.

30. The Contract provides for a two-year base period from the date of award, during which time the winning bidder will provide the services. Following the two-year base period, the Contract provides for three one-year options, during which time the service order could be awarded to another competitor who offered a lower price.

31. The Contract provides that an Offeror may reduce its Contract prices at any time during the life of the Contract. As such, a reduction of price during the base period could affect the award of the option period services.

32. Because the federal agencies under the Contract are being awarded on a continuing basis, a bidder's lowering of its Contract prices during the Award Period would result in a reduced price for consideration by the GSA.

33. Therefore, an Offeror (as a competing bidder) can improve its competitive position if it reduces its Contract prices below the Contract prices of its competitors during the Award Period.

34. For all of these reasons, disclosure of Cox's pricing information to SBC, or any other competitor, would place Cox at a competitive disadvantage in the bidding process for systems not yet awarded, as well as for systems to be awarded during the option periods.

II.     **SBC's FOIA Request for Cox's Pricing Information Under the Contract.**

35. On information and belief, on or around December 15, 2005, SBC submitted a FOIA request to GSA requesting Cox's pricing information under the Oklahoma Service Contract.

36. On or around December 21, 2005, GSA requested redacted pricing information from Cox without informing Cox that such information was being requested for production pursuant to FOIA.

37. On or around December 28, 2005, Cox provided GSA the information requested, redacting all of the pricing information included in the pricing schedules.

38. On January 3, 2006, GSA sent a letter to Cox stating that it would be releasing certain redacted information provided by Cox from the pricing schedules.

39. GSA's January 3, 2006 letter purported to include the information that GSA had decided to release. The only information enclosed with the letter were the redacted pages that Cox had sent to GSA that did not include any of Cox's confidential pricing information.

40. On February 28, 2006, however, GSA sent another letter to Cox stating that GSA intended to release "additional information" under FOIA.

41. Upon review of GSA's February 28, 2006 letter, it became apparent to Cox that GSA intended to provide Cox's complete pricing schedule under the Oklahoma Service Contract under FOIA without any information redacted, despite the fact that current-year pricing was still the subject of a competitive bidding process.

42. On the next day, March 1, 2006, Cox responded by e-mail to GSA's February 28, 2006 letter, stating that Cox strongly objected to GSA releasing Cox's complete pricing schedule under the Oklahoma Services Contract to SBC.

43. The March 1, 2006 e-mail response to GSA made clear that the GSA's planned disclosure threatened Cox's competitive position, stating, "We strongly feel that providing this pricing information [would] give our biggest competitor a major advantage in future government contract awards and possibly the awards under the current [] contract."

44. Later on March 1, 2006, GSA sent Cox another letter asking that Cox provide specific information regarding its objection to release of the information, including:

   a. the specific information that Cox believed should not be released;

   b. Cox's reasons for not wanting the information released; and

   c. actions taken by Cox to avoid public disclosure of such information.

45. GSA gave Cox until March 8, 2006 to provide the information requested in GSA's March 1, 2006 letter.

46. On March 7, 2006, Cox responded to GSA's March 1, 2006 letter, providing detailed and specific answers to each of GSA's requests.

47. In a one-page letter dated March 31, 2006, GSA informed Cox, without any explanation of its reasoning or any rebuttal of Cox's points, that GSA intended to release the information in five working days. Subsequently, GSA informed Cox that it intended to disclose the information on Friday April 7, 2006.

48. GSA's March 31, 2006 did not respond to any of Cox's arguments and did not even acknowledge receipt or consideration of Cox's March 7, 2006 letter, which described the reasons why the pricing information should not be released.

49. The GSA letter relied on a "U.S. court decision dated September 7, 2001 between Sprint Communications Company and GSA that established the precedence [sic] to release the first year pricing of our telecommunication [sic] contracts of which GSA is currently following."

### III.   Release of the Bidding Information Will Result in Immediate and Irreparable Competitive Harm to Cox.

50. As set forth in detail in Cox's March 7, 2006 letter to GSA, release of Cox's Contract pricing information will result in immediate and irreparable harm to Cox's competitive position in both the Oklahoma markets and other markets across the country.

51. Unlike some other government contracts that GSA accepts bids on, this is not a "one-time" single vendor award to be rebid upon expiration of the contract. Rather this Contract is still in a competitive situation because not all systems under the Contract will be awarded until at least 2007 and because there are three one-year options under the Contract, which give the government an opportunity to switch to a lower bidder at the expiration of the two year base period.

52. Given the ongoing nature of awards under the Contract, GSA's disclosure of Cox's pricing information would provide a competitive advantage to SBC, Cox's direct competitor

under this Contract, including its option period, and Cox's likely competitor under future GSA contracts.

53. Cox's pricing under the Contract was established and accepted without Cox having any knowledge of or regard for the pricing information of other Offerors, including SBC.

54. Cox's pricing information was submitted pursuant to Federal Acquisition Regulations, which provide that a bidder's confidential pricing information shall remain confidential.

55. Disclosure of Cox's pricing information to SBC would prejudice Cox in several ways, including, among other things:

   a. allowing SBC to artificially bid for and set prices in an anticompetitive manner by minimally underbidding Cox for GSA's contracts;

   b. triggering an iterative process of competitors requesting pricing information under FOIA, which would undermine the process established in the FARs and result in an anticompetitive "ratchet-down" of prices as competitors would continually lower their prices to secure future awards under the Contract;

   c. giving SBC a substantial anticompetitive advantage over Cox and other biddersin bidding for services in other GSA contract regions yet to be bid, including California, Arizona, Louisiana and Kansas.

56. Providing Cox's competitive bidding information to one of Cox's primary competitors during the bidding process, while perhaps unnaturally lowering the Contract prices to the benefit of GSA, would have a significant anticompetitive and unfair effect on what is supposed to be a competitive bidding process.

57. Moreover, once disclosed to SBC, Cox's confidential information could be provided to other competitors of Cox, including competitors involved in the GSA bidding process.

58. The information requested by SBC is not publicly available. Because of its confidential nature, Cox takes a variety of measures to protect it from public disclosure,

including, but not limited to, complying with State and Federal laws relating to the non-disclosure of confidential information; determining the pricing information without assistance from outside parties, disclosing the pricing information within Cox only on a "need-to-know basis," not making the information available for public review and not posting the pricing information on Cox's web site.

59. In fact, the phrase "**Proprietary not to be disclosed outside the Government**" was stamped by GSA itself in bold lettering across the bottom of every page of the pricing schedules.

60. Providing this information to SBC would allow SBC to determine exactly how much it would need to lower its bids to underbid Cox by the smallest amount possible, thereby disrupting what is an otherwise competitive bidding process.

61. GSA's decision is arbitrary and capricious, and is in violation of the Administrative Procedure Act, FOIA, the Trade Secrets Act and the Code of Federal Regulations that govern the non-release of such information.

62. The harms to Cox would be immediate and irreparable, because GSA has stated its intention to release this pricing information to SBC on Friday, April 7, 2006 and because, once released, it would be impossible for GSA to retract the information provided to SBC in any meaningful manner.

## COUNT I
### INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT
(5 U.S.C. § 701-706)

63. Cox hereby realleges and incorporates by reference each of the allegations in paragraphs 1 through 62 of this Complaint as if set forth completely herein.

64. This Count arises under the Administrative Procedures Act, 5 U.S.C. §§ 701-706.

65. GSA's interpretation of the FAR's are only due minimal deference because the FAR is not written or prepared by GSA, but is instead the joint product of several agencies.

66. GSA's decision to release Cox's complete pricing schedule under the Oklahoma Services Contract is arbitrary and capricious because it is entirely unsupported by the administrative record in this matter.

67. GSA's decision to release Cox's complete pricing schedule under the Oklahoma Services Contract is arbitrary and capricious and in violation of law, because, among other things:

   a. GSA's decision is contrary to Exemption 4 of FOIA, 5 U.S.C. §552(b)(4), which exempts from FOIA's disclosure confidential business information;

   b. GSA's decision is contrary to the Trade Secrets Act, 18 U.S.C. §1905, which prohibits the disclosure of confidential business information that would cause competitive harm to a submitter; and

   c. GSA's decision is contrary to the FARs which prohibit the release of information, specifically including pricing information, that are exempted from disclosure under Exemption 4 of FOIA.

68. Cox has exhausted its administrative remedies within GSA, and GSA will release Cox's confidential pricing information to SBC on Friday, January 7, 2006 unless enjoined.

69. The release of Cox's complete pricing schedule under the Oklahoma Services Contract to SBC will result in immediate and irreparable injury.

70. GSA will not be harmed if the injunction is issued, and the public interest will be served, because the competitive bidding process ensured by law will be preserved.

### COUNT II
### DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT
### (28 U.S.C. § 2201)

71. Cox hereby realleges and incorporates by reference each of the allegations in paragraphs 1 through 69 of this Complaint as if set forth completely herein.

72. This Count arises under the Declaratory Judgment Act, 28 U.S.C. §2201.

73. An actual controversy exists between Cox and GSA regarding the potential release of Cox's complete pricing schedule under the Oklahoma markets bid solicitation.

74. GSA's decision to release Cox's complete pricing schedule under the Oklahoma markets bid solicitation is arbitrary and capricious because it is entirely unsupported by the administrative record in this matter.

75. GSA's decision to release Cox's complete pricing schedule under the Oklahoma Service Contract is arbitrary and capricious and in violation of law, because, among other things:

   a. GSA's decision is contrary to Exemption 4 of FOIA, 5 U.S.C. §552(b)(4) which exempts from FOIA's disclosure requirements confidential business information;

   b. GSA's decision is contrary to the Trade Secrets Act, 18 U.S.C. §1905, which prohibits the disclosure of confidential business information that would cause competitive harm to a submitter; and

   c. GSA's decision is contrary to the FARs which prohibit the release of information, specifically including pricing information, that is exempted from disclosure under Exemption 4 of FOIA.

76. Cox is entitled to a declaration from this Court that GSA's decision to release Cox's complete pricing schedule under the Oklahoma Services Contract is arbitrary and capricious because it is unsupported by the administrative record in this matter and because it is in violation of law.

**PRAYER FOR RELIEF**

WHEREFORE, Cox respectfully requests that this Court:

A. Enter judgment in Cox's favor on Counts I and II of the Complaint;

B. Declare that GSA's decision to release Cox's pricing information was arbitrary and capricious, not supported by the administrative record and contrary to law;

C. Enter a temporary restraining order against GSA, enjoining the release of any and all of Cox's pricing information under the Oklahoma Service Contract until such time as this matter can be heard on a preliminary injunction motion;

D. Enter a preliminary injunction against GSA, enjoining the release of any and all of Cox's pricing information under the Oklahoma Services Contract until such time as this matter can be fully adjudicated before this Court;

E. Enter a permanent injunction against GSA, permanently enjoining the release of all of Cox's pricing information under the Oklahoma Services Contract;

F. Order GSA to pay the costs and expenses incurred to enforce Cox's rights, including the costs of the action; and

G. Grant such other and further relief as this Court deems just and proper.

Dated: April 6, 2006

Respectfully submitted,

David E. Mills
(D.C. Bar No. 401979)
W. Bradley Ney
(D.C. Bar No. 486363)
(D. D.C. Bar Application Pending)
DOW LOHNES & ALBERTSON, PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, DC 20036
Telephone: (202) 776-2000
Facsimile: (202) 776-2222