**UNITED STATED DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| COX OKLAHOMA TELECOM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL SERVICES ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF ROGER BURNETT IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

I, Roger Burnett, declare as follows:

### Background

1.      I have been the Federal Accounts Manager for Cox Oklahoma Telecom LLC ("Cox") since 2000.

2.      Prior to accepting that position with Cox, I served in the United States Air Force for 26 years, including serving in a number of telecommunications roles.

3.      In my position as Federal Accounts Manager, I am responsible for providing customer support for all federal government customers of Cox in the Oklahoma City, Oklahoma and Tulsa, Oklahoma markets.  I was involved in and have actual knowledge regarding the GSA bidding process and other factual matters underlying this dispute.

### The GSA Bidding Process For Oklahoma Markets

4.      In April 2004, the General Services Administration ("GSA") began soliciting competitive bids for the provision of telecommunications services, including voice and data services, for the United States Government in the Texas, Oklahoma and Arkansas markets.

1

5.     In or around November 2005, in response to GSA's solicitations, Cox submitted bids to provide voice and data services within Oklahoma in the Oklahoma City and Tulsa markets under Contract GS07T06BGD0003 (the "Oklahoma Service Contract" or the "Contract"). A true and correct copy of the Oklahoma Service Contract as bid by Cox and provided by GSA is attached as Exhibit A.

6.     The GSA informed Cox that, on or around November 2005, SBC, a subsidiary of AT&T Corporation ("AT&T"), also submitted bids in the Tulsa, Oklahoma and Oklahoma City, Oklahoma markets.

7.     SBC and Cox are major competitors for local voice and data services in the Oklahoma markets and across the nation.

8.     Under the provisions of the Contract, orders the various orders for federal agencies included in the Contract would be awarded in phases, with different portions of the Contract being awarded each quarter, beginning in the second quarter of 2006 and continuing through the first quarter of 2007 (the "Award Period").

9.     During the second quarter of 2006, GSA awarded a small number of orders for federal agencies for which the parties had placed bids for required telecommunications services under the Contract. Most of the orders for federal agencies under the Contract have not yet been awarded, and are therefore the subject of ongoing competition.

10.     As is typical with public works bidding processes, the bids are non-public, sealed bids that are not disclosed to competing Offerors.

11.     Each federal agency awarded under the Contract is awarded to the Offeror who offered the lowest service price.

12.    The Contract provides for a two-year base period from the date of award of a given federal agency, during which time the winning Offeror will provide the services. Following the two-year base period, the Contract provides for three one-year options, during which time the required telecommunications services could be awarded to another competitor who offered a lower price.

13.    The Contract provides that an Offeror may reduce its Contract prices at any time during the life of the Contract.  As such, a reduction of price during the base year period could affect the award of the option period services.

14.    Because federal agencies under the Contract are being awarded on a continuing basis during the Award Period, an Offeror's lowering of its Contract prices during the Award Period would result in a reduced price for consideration by the GSA.

15.    Therefore, an Offeror can improve its competitive position if it reduces its Contract prices below the Contract prices of its competitors during the Award Period.

16.    For all of these reasons, disclosure of Cox's pricing information to SBC, or any other competitor, would place Cox at a competitive disadvantage in the bidding process for systems not yet awarded, as well as for systems to be awarded during the option period.

### SBC's FOIA Request for Cox's Pricing Information Under the Contract.

17.    On information and belief, on or around December 15, 2005, SBC submitted a FOIA request to GSA requesting Cox's pricing information under the Oklahoma Service Contract.

18.    On or around December 21, 2005, GSA requested redacted pricing information from Cox, without informing Cox that such information was being requested for production

pursuant to FOIA. A true and correct copy of a December 21 e-mail from Brenda Murray at the Oklahoma City GSA Office to me is attached as Exhibit B.

19.     On or around December 28, 2005, Cox provided the information requested by GSA, redacting all of the pricing information included in the pricing schedules.

20.     On January 3, 2006, GSA sent a letter to Cox stating that it would be releasing certain redacted information provided by Cox from the pricing schedules. A true and correct copy of the January 3, 2006 letter from Jill LaDuca to me is attached hereto as Exhibit C.

21.     GSA's January 3, 2006 letter purported to include the information that GSA had decided to release. All that was enclosed with the letter, which made no reference to any FOIA request, were the redacted pages that Cox had sent to GSA that did not include any of Cox's confidential pricing information.

22.     However, on February 28, 2006, GSA sent another letter to Cox stating that GSA intended to release "additional information" under FOIA. A true and correct copy of the February 28, 2006 letter from Jill LaDuca to me is attached hereto as Exhibit D.

23.     Upon review of GSA's February 28, 2006 letter, it became apparent to Cox that GSA intended to provide, at a minimum, Cox's complete pricing schedule under the Oklahoma Service Contract to SBC without any information redacted, despite the fact that current year and option year pricing information was still the subject of a competitive bidding process.

24.     On March 1, 2006, Cox responded to GSA's February 28, 2006 letter, stating that Cox strongly objected to GSA releasing Cox's complete pricing schedule under the Oklahoma Services Contract to SBC. A true and correct copy of Cox's March 1, 2006 e-mail to Jill LaDuca is attached hereto as Exhibit E.

25.    The March 1, 2006 e-mail response to GSA made it clear that Cox felt this action threatened its competitive position, stating, "We strongly feel that providing this pricing information [would] give our biggest competitor a major advantage in future government contract awards and possibly the awards under the current [] contract."

26.    Later on March 1, 2006, GSA sent Cox another letter asking that Cox provide specific information regarding its objection to release of the information, including:

    a.    the specific information that Cox did not feel should be released;

    b.    Cox's reasons for not wanting the information released; and

    c.    actions taken by Cox to avoid public disclosure of such information.

A true and correct copy of the March 1, 2006 letter from Jill LaDuca to me is attached hereto as Exhibit F.

27.    GSA gave Cox until March 8, 2006 to provide the information requested in GSA's March 1, 2006 letter.

28.    On March 7, 2006, Cox responded to GSA's March 1, 2006 letter, providing detailed and specific answers to each of GSA's requests. A true and correct copy of Cox Vice President Allen Roberts to Marjorie Readout, Director of Resource Management at GSA is attached hereto as Exhibit G.

29.    On March 31, 2006, GSA informed Cox in a one page letter, without any explanation of its reasoning or any rebuttal of Cox's points, that GSA intended to release the information in five working days. Subsequently, GSA informed Cox that it intended to disclose the information on Friday April 7, 2006. A true and correct copy of the March 31, 2006 letter from Jill DaLuca to me is attached as Exhibit H.

30.    The harms to Cox if its pricing information is released will be immediate and irreparable. GSA has stated its intention to release this pricing information to SBC on Friday, April 7, 2006 and, once released, it would be impossible for GSA to retract the information provided to SBC in any meaningful manner.

**Release of the Bidding Information Will Result in Irreparable Competitive Harm to Cox**

31.    As set forth in detail in Cox's March 7, 2006 letter to GSA, release of Cox's Contract pricing information will result in immediate and irreparable harm to Cox's competitive position in both the Oklahoma markets and other markets across the country.

32.    Given the ongoing nature of awards under the Contract, GSA's full disclosure of Cox's pricing information would provide a competitive advantage to SBC, Cox's direct competitor under this Contract, and Cox's likely competitor under future GSA contracts.

33.    Cox's pricing under the Contract was established and accepted without Cox having any knowledge of or regard for the pricing information of other bidders, including SBC.

34.    Cox's pricing information was submitted pursuant to Federal Acquisition Regulations that make a bidder's pricing information confidential.

35.    Disclosure of Cox's pricing information to SBC would prejudice Cox in several ways, including, among other things:

      a. allowing SBC to artificially bid for and set prices in an anticompetitive manner by minimally underbidding Cox for GSA's contracts;

      b. triggering an iterative process of competitors requesting pricing information under FOIA, which would undermine the process established in the FARs and result in an anticompetitive "ratchet-down" of prices as competitors would continually lower their prices to secure future awards under the Contract;

      c. giving SBC a substantial anticompetitive advantage over Cox and other biddersin bidding for services in other GSA contract regions yet to be bid, including California, Arizona, Louisiana and Kansas.

36.     Providing Cox's competitive bidding information to one of Cox's primary competitors during the bidding process would have a significant anticompetitive and unfair effect on what is supposed to be a competitive bidding process.

37.     Moreover, once disclosed to SBC, Cox's confidential information could be provided to other competitors of Cox, including competitors involved in the GSA bidding process.

38.     The information requested by SBC is not information that is publicly available. Because of its confidential nature, Cox takes a variety of measures to protect it from public disclosure, including, but not limited to, complying with State and Federal laws relating to the non-disclosure of confidential information; determining the pricing information without assistance from outside parties; disclosing the pricing information within Cox only on a "need-to-know basis;" not making the information available for public review; and not posting the pricing information on Cox's web site.

39.     In fact, the phrase **"Proprietary not to be disclosed outside the Government"** was stamped by GSA itself in bold lettering across the bottom of every page of the pricing schedules.

40.     Unlike some other government contracts that GSA accepts bids on, this is not a "one-time" single vendor award to be rebid upon expiration of the contract. Rather this Contract is still in a competitive situation because not all systems under the Contract will be awarded until at least 2007 and because there are three one-year options under the Contract, which give the government an opportunity to switch to a lower bidder at the expiration of the two-year base period.

41.    Providing this information to SBC would allow SBC to determine exactly how much it would need to lower its bids by in order to underbid Cox by the smallest amount possible, thereby disrupting what is an otherwise competitive bidding process.

42.    The harms to Cox would be immediate and irreparable, because GSA has stated its intention to release this pricing information to SBC on Friday, April 7, 2006 and because, once released, it would be impossible for GSA to retract the information provided to SBC in any meaningful manner.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Roger Burnett

Dated: April __, 2006

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Roger Burnett

Dated: April 5, 2006

9