**UNITED STATED DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA**

_____

COX OKLAHOMA TELECOM, LLC,     )
     )
              Plaintiff,     )
     )
     ) Case No.: 1:06CV00637 RBW
              v.     )
     )
GENERAL SERVICES ADMINISTRATION,     )
     )
              Defendant.     )
_____)

### COX OKLAHOMA TELECOM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

      Plaintiff, Cox Oklahoma TeleCom, LLC, ("Cox"), by and through counsel, files this memorandum of law in support of Cox's motion for preliminary injunction.

### INTRODUCTION

      This motion for preliminary injunction arises in a "reverse FOIA" action under the Freedom of Information Act ("FOIA") and Administrative Procedure Act ("APA"), challenging the decision of the General Services Administration ("GSA") to provide Cox's confidential pricing information to a major competitor in an ongoing bidding process for a government telecommunications contract (the "Contract"). GSA's planned disclosure would violate federal statutes and regulations and would cause immediate and irreparable harm to Cox, the government bidding process and the public interest.

      Cox competes on a continual basis with Southern Bell Companies ("SBC") and others for service awards under the Contract through a <u>sealed</u> bidding process. The Contract is not awarded all at once such that the award price might become irrelevant to

future bidding.  To the contrary, the Contract is awarded in parts, on a continual basis, with annual option periods following the initial award, and the award prices (and all the underlying details and methodologies) continue to be highly confidential information, critical to a competitive bidding process.  Disclosure of one competitor's information is fundamentally antithetical to the sealed bidding process and certainly would cause substantial harm to Cox and other competitors.

The government bidding process is highly regulated under the Federal Acquisition Regulations (the "FARs") to protect the confidential pricing information of all bidders and to ensure fair competition.  Nonetheless (and without plausible justification), SBC has attempted to circumvent that process by filing a request under FOIA for Cox's competitive pricing information.  When properly applied, FOIA expressly exempts such information from disclosure, and both the FARs and the Trade Secrets Act require GSA to honor that exemption.  Without explanation, however, GSA has decided that it will provide this confidential and proprietary pricing information to SBC.

GSA's action is improper as a matter of law.  The Cox pricing information clearly falls within FOIA Exemption 4, the Federal Acquisition Streamlining Act ("FASA"), and the Trade Secrets Act, all of which prohibit the disclosure of such information.  There is no factual or legal justification for GSA's planned disclosure of this information to Cox's direct competitor (or to any other party) given the on-going sealed bidding process under the Contract.

Unless GSA is enjoined from making its planned disclosure, Cox's confidential pricing information will become known to its competitor and others, and Cox will be placed at a significant and unfair competitive disadvantage in the continued bidding

2

process under the Contract, as well as in the bidding for upcoming GSA contracts in the same and other markets.

Cox respectfully requests that this Court grant Cox preliminary injunctive relief to prevent the unlawful disclosure of Cox's pricing information until such time as this case is finally decided on the merits.

## FACTS

**I.     The GSA Bidding Process For Oklahoma Markets.**

In April 2004, GSA began soliciting competitive bids for the provision of telecommunications services, including voice and data services, for the United States Government in the Texas, Oklahoma and Arizona markets.  (Affidavit of Roger Burnett dated April 14, 2006 ("Burnett Aff.") at ¶ 4.)  In response to GSA's solicitations, in November 2005, Cox submitted bids as an Offeror pursuant to GSA contract GS07T06BGD003 (the "Oklahoma Service Contract" or "Contract") to provide voice and data services within the Tulsa and Oklahoma City markets in Oklahoma.  (Burnett Aff. at ¶ 5.)  The GSA has informed Cox that Southern Bell Companies ("SBC"), a subsidiary of AT&T Corporation ("AT&T"), also submitted bids as an Offeror in the Tulsa and Oklahoma City markets.  (Burnett Aff. at ¶ 6.)  SBC is a major competitor with Cox in the market for local voice and data services in the Oklahoma markets and across the nation.  (Burnett Aff. at ¶ 7.)

Under the Contract, the right to be the telecommunications provider for various federal agencies needing telecommunications services is awarded in phases, with service to different federal agencies in different markets being awarded each quarter, beginning in the first quarter of 2006 and continuing through at least the first quarter of 2007 (the

"Award Period").[1]  (Burnett Aff. at ¶ 8.)  During the second quarter of 2006, GSA made

a small number of awards for federal agencies for which the parties had placed bids to

provide services under the Contract.  However, most of the awards for federal agencies

under the Contract have not yet been made and are the subject of ongoing competition.

(Burnett Aff. at ¶ 9.)

      As is typical in a public works bidding process, the Offerors submit non-public,

sealed bids that are not disclosed to competing Offerors.  (Burnett Aff. at ¶ 10.)  Each

federal agency award under the Contract is made to the Offeror who offered the lowest

service price.  (Burnett Aff. at ¶ 11.)  Offerors under the contract have a number of

options regarding their pricing methodology.  A party can submit bids that reflect entirely

tariffed pricing, bids that do not include any tariffed pricing, or bids that include a

combination of tariffed and non-tariffed pricing.  (Burnette Aff. ¶ 36.)  Because of the

non-public nature of the bidding process, a competing Offeror has no way of knowing

which pricing methodology its competitors are using.  (Burnette Aff. ¶ 37.)

      The Contract provides for a two-year contractual base period from the date of

award of a given federal agency, during which time the winning Offeror will provide the

services to the agency.  (Burnett Aff. at ¶ 12.)  Following the two-year base period, the

Contract provides for three one-year options, during which three-year period the required

telecommunications services could be awarded to any other competitor who offers a

lower price.  (Burnett Aff. at ¶ 12.)  The Contract provides that an Offeror may reduce its

---

[1]      GSA's fiscal year begins in October of the preceding calendar year and runs
through September of the stated calendar year.  Hence, the first fiscal quarter of 2006 ran
from October 1, 2005 through December 31, 2005.  The second fiscal quarter of 2006 ran
from January 1, 2006 through March 31, 2006.

Contract prices at any time during the life of the Contract.  (Burnett Aff. at ¶ 13.)  A reduction of price during the base-year period could affect the award of the option-period services, as well as the award of additional services still being ordered under the base period, as described below.  (Burnett Aff. at ¶ 13.)

Because awards for federal agencies under the Contract are being made on a continuing basis during the Award Period, an Offeror's lowering of its Contract prices during the Award Period would result in a new reduced price for consideration by the GSA.  (Burnett Aff. at ¶ 14.)  Therefore, an Offeror can improve its competitive position if it reduces its Contract prices below the Contract prices of its competitors during the Award Period.  (Burnett Aff. at ¶ 15.)  For all of these reasons, disclosure of any of Cox's pricing information to SBC, or any other competitor, would place Cox at a competitive disadvantage in the bidding process for awards not yet made, as well as for systems to be awarded during the option periods.  (Burnett Aff. at ¶ 16.)  In addition, disclosing information about Cox's prices would place Cox at a competitive disadvantage during bidding in other markets or on future contracts in the Oklahoma market, because it would provide Cox's competitors insight into Cox's prices and pricing methodology on this Contract and on other government contracts.

## II.    SBC's FOIA Request for Cox's Pricing Information Under the Contract.

On December 21, 2005, GSA requested redacted pricing information from Cox, without indicating that such information was being requested so that it could be released to Cox's competitor.  (Burnett Aff. At ¶ 18.)  On or around December 28, 2005, Cox provided the information requested by GSA, redacting all of the pricing information included in the pricing schedules.  (Burnett Aff. at ¶ 19.)

On January 3, 2006, GSA sent a letter to Cox stating that it would be releasing certain redacted information provided by Cox from the pricing schedules. (Burnett Aff. At ¶ 20.) GSA's January 3, 2006 letter purported to include the information that GSA had decided to release. (Id.) All that was enclosed with the letter were the redacted pages that Cox had sent to GSA, which did not include any of Cox's confidential pricing information. (Burnett Aff. at ¶ 21.) Cox did not object to the release of such information because only the redacted pages were being provided.

On February 28, 2006, GSA sent another letter to Cox stating that SBC had made a FOIA request for Cox's confidential pricing information and announcing that GSA intended to release "additional information" to SBC. (Burnett Aff. at ¶ 22.) Prior to that time, GSA had never provided Cox with the notice and opportunity to object to disclosure of information under FOIA that is required under 41 C.F.R. § 105-60-501. Upon review of GSA's February 28, 2006 letter, it became apparent to Cox that GSA intended to provide Cox's complete first year pricing schedule under the Oklahoma Service Contract to SBC without any information redacted, despite the fact that current year and option year pricing information was still the subject of a continual competitive bidding process.[2] (Burnett Aff. at ¶ 23.)

On March 1, 2006, Cox responded by e-mail to GSA's February 28, 2006 letter, stating that Cox strongly objected to GSA releasing Cox's confidential pricing

---

[2]    It is inaccurate for GSA to refer to such information in its letter merely as "first year" pricing information. Under the pricing form provided by GSA, first and second year pricing are included together in a single column, so that it would be clear to any competitor familiar with the forms that first and second year pricing are identical. (Burnett Aff. at ¶ 24.) Moreover, because of the continuing nature of the bidding process at issue, it is apparent that even "first year" pricing has competitive impact during the Award Period, so that any implication that first year pricing information is merely historical or irrelevant is simply incorrect.

information under the Oklahoma Services Contract to SBC.  (Burnett Aff. at ¶ 25.)  The

March 1, 2006 e-mail response to GSA made clear that GSA's disclosure threatened

Cox's competitive position, as Cox explained that, "We strongly feel that providing this

pricing information [would] give our biggest competitor a major advantage in future

government contract awards and possibly the awards under the current [] contract."  (Id.)

Later on March 1, 2006, GSA sent Cox another letter asking that Cox provide the

following information to support its objection:

      a.   The specific information that Cox believed should not be released;

      b.   Cox's reasons for not wanting the information released; and

      c.   Any actions taken by Cox to avoid public disclosure of such information.

(Burnett Aff. at ¶ 27.)  GSA gave Cox until March 8, 2006 to provide the information

requested in GSA's March 1, 2006 letter.  (Id.)

On March 7, 2006, Cox responded to GSA's March 1, 2006 letter, providing

detailed and specific answers to each of GSA's requests.  (Burnett Aff. at ¶ 29.)  On

March 31, 2006, GSA informed Cox in a one-page letter, without any explanation of its

reasoning or any rebuttal of Cox's points, that GSA intended to release the information in

five working days.  (Burnett Aff. at ¶ 30)  Subsequently, GSA informed Cox that it

intended to disclose the information on Friday April 7, 2006. (Burnett Aff. at ¶ 30.)

GSA's March 31, 2006 letter did not respond to any of Cox's arguments; it did

not even acknowledge receipt or consideration of Cox's March 7, 2006 letter reflecting

the reasons why the pricing information should not be released.  (Burnett Aff. at ¶ 30.)  In

fact, GSA's letter erroneously stated that Cox had not "described how this data revealed

any proprietary or commercially confidential information."  Id.  Finally, the GSA letter

claimed a "U.S. court decision dated September 7, 2001 between Sprint Communications
Company and GSA …established the precedence [sic] to release the first year pricing of
our telecommunication [sic] contracts of which GSA is currently following." (<u>Id</u>.)

Cox filed a Complaint and Application for Temporary Restraining Order on April
6, 2006, asking this Court to enjoin GSA's intended disclosure of Cox's confidential
pricing information.  The Court set the matter for a hearing at 9:00 a.m. on April 7, 2006.
At the hearing, GSA agreed to stipulate that it would treat the information at issue as
confidential business and financial information under FOIA Exemption 4, and that the
information would not be released until this Court had ruled on Cox's forthcoming
Motion for Preliminary Injunction.  The Court set a briefing schedule, including a hearing
for the preliminary injunction motion on May 24, 2006.

**III.    Release of the Bidding Information Will Result in Immediate and
<u>Irreparable Competitive Harm to Cox.</u>**

As described in detail in Cox's March 7, 2006 letter to GSA, release of Cox's
confidential pricing information under the Contract will result in immediate and
irreparable harm to Cox's competitive position in both the Oklahoma markets and other
markets across the country. (Burnett Aff., Exhibit I.)  Given the ongoing nature of awards
under the Contract, GSA's disclosure of Cox's pricing information would provide a
competitive advantage to SBC, Cox's direct competitor under this Contract and Cox's
likely competitor under future GSA contracts.  (<u>Id</u>.)  Cox's pricing under the Contract
was established without Cox having any knowledge of the pricing information of other
Offerors, including SBC.  (<u>Id</u>.)

In fact, Cox's pricing information was submitted pursuant to Federal Acquisition Regulations that explicitly make confidential pricing information undisclosable. See, e.g., 48 C.F.R. 15.503; 48 C.F.R. 15.506.

Disclosure of Cox's pricing information to SBC would prejudice Cox in several ways, including, among other things:

    a. allowing SBC to artificially bid for and set prices in an anticompetitive manner by minimally underbidding Cox for awards under the current Contract and future GSA's contracts;

    b. triggering an iterative process of competitors requesting pricing information under FOIA, which would undermine the process established in the FARs and result in an anticompetitive "ratchet-down" of prices as competitors would continually lower their prices to secure future awards under the Contract;

    c. giving SBC a substantial anticompetitive advantage over Cox and other bidders in bidding for services in other GSA contract regions yet to be bid, including California, Arizona, Louisiana and Kansas, because SBC would be aware of the pricing methodology employed by Cox in bidding for government contracts generally.

(Burnett Aff. at ¶ 38.) Providing Cox's competitive bidding information to one of Cox's primary competitors during the bidding process would have a significant anticompetitive and unfair effect on what is supposed to be a sealed and competitive bidding process. (Burnett Aff. at ¶ 36.) Moreover, once disclosed to SBC, Cox's confidential information could be provided to other competitors of Cox, including other competitors also involved in the GSA bidding process. (Burnett Aff. at ¶ 37.)

The information requested by SBC is not publicly available. (Burnett Aff. at ¶ 37.) Because of its highly confidential nature, Cox takes a variety of measures to protect it from public disclosure, including, but not limited to: (1) complying with State and Federal laws relating to the non-disclosure of confidential information; (2) determining

the pricing information without assistance from outside parties; (3) disclosing the pricing

information within Cox only on a "need-to-know basis;" (4) not making the information

available for public review; and (5) not posting the pricing information on Cox's web

site.  (Burnett Aff. at ¶ 38.)  In fact, the phrase "**Proprietary not to be disclosed outside**

**the Government**" was stamped by GSA itself in bold lettering across the bottom of

every page of the pricing schedules.  (Burnett Aff. at ¶ 39.)

     Unlike some other government contracts on which GSA accepts bids, this is not a

"one-time" single vendor award to be rebid upon expiration of the contract.  (Burnett Aff.

at ¶ 40.)  In that type of contract, the historical first-year price paid by the government

might possibly be subject to disclosure (though it still should not be disclosed if it would

provide insight to pricing strategies likely to be used in bidding on future contracts).  This

Contract, however, is still in a competitive posture because not all systems under the

Contract will be awarded until at least 2007, and because there are three one-year options

under the Contract.  This gives the government the opportunity to switch to a lower

bidder at the expiration of the two-year base period, and on an annual basis thereafter.

(Id.)  Providing Cox's pricing information to SBC would allow SBC to determine exactly

how much it would need to lower its bids to underbid Cox by the smallest amount

possible, thereby disrupting what is an otherwise competitive bidding process.  (Id. at

¶ 41.)

     The harm to Cox would be immediate and irreparable, because GSA has stated its

intention to release this pricing information to SBC and because, once released, it would

be impossible for GSA to retract the information provided to SBC in any meaningful

manner.  (Id. at ¶ 42.)  The GSA also is harmed because SBC and others would be able to

underbid other Offerors by the minimal amount necessary to secure the award, rather than through the sealed competitive process.

## ARGUMENT AND CITATION TO AUTHORITY

## I.    Cox Satisfies the Standard for Issuance of a Priliminary Injunction.

A preliminary injunction should be issued to protect a plaintiff where:

(1)    The plaintiff has a substantial likelihood of success on the merits;

(2)    Without the relief, the plaintiff faces an imminent threat of irreparable harm;

(3)    The preliminary injunction is unlikely to substantially injure other parties; and

(4)    The injunction would further the public interest.

Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).  The above requirements for a preliminary injunction are not independent prerequisites but factors to be evaluated on a sliding scale approach.  Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998).  Thus, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).  Where the moving party is seeking to maintain the status quo, the Court should avoid an "exaggeratedly refined analysis of the merits at an early stage in the litigation."  Wash. Metro. Transit Comm'n v. Holiday Tours, 559 F.2d 841, 844 (D.C. Cir. 1977).  As set forth below, Cox clearly meets these requirements.

## A.    Cox has a Substantial Likeliood of Success on the Merits.

In a reverse FOIA action initiated pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq., a party will succeed on the merits if it can demonstrate that an agency decision was "arbitrary and capricious, an abuse of discretion, or not in

accordance with law." 5 U.S.C. § 706(2)(A).  <u>See also</u> <u>Mallinkrodt Inc. v. West</u>, 140 F.

Supp.2d 1, 4 (D. D.C. 2000).  Here, Cox has a substantial likelihood of success on the

merits for at least two independent reasons:

> (1) GSA's decision to release Cox's confidential pricing information is arbitrary
> and capricious in that GSA did not provide any justification for its actions and
> did not acknowledge or address the arguments made by Cox; and

> (2) GSA's decision to release Cox's confidential pricing information is not in
> accordance with law because it violates the Trade Secrets Act, 18 U.S.C. §
> 1905, the Federal Property and Administrative Services Act, as amended by
> the Federal Acquisition Streamlining Act ("FASA"), 41 U.S.C. § 253b(e)(3),
> and the FARs promulgated thereunder.

### (1) GSA's decision to release Cox's confidential pricing information is <u>arbitrary and capricious.</u>

An agency's action is arbitrary and capricious where it is not supported by

substantial evidence in the agency record.  <u>Eagle Healthcare v. Shalala</u>, 52 F.Supp.2d 1

(D. D.C. 1999).  Specifically, where pricing information is at issue, an agency's decision

will be considered arbitrary and capricious unless it provides a logical explanation why

the information will not result in competitive harm.  <u>See</u> <u>McDonnell Douglas Corp. v.</u>

<u>NASA</u>, 180 F.3d 303, 307 (D.C. Cir. 1999).  Specifically, the agency must provide a

sufficient reason for its refusal to withhold such information on the administrative record

or else the agency will be precluded from providing a "post hoc rationalization for the

first time at the district court level."  <u>AT&T Info Sys. v. GSA</u>, 810 F.2d 1233, 1236 (D.C.

Cir. 1987).  Where an agency fails to consider the relevant factors before reaching a

decision, the agency's action is arbitrary and capricious.  <u>National Wildlife Federation v.</u>

<u>Norton</u>, 332 F.Supp.2d 170 (D.D.C. 2004).

The GSA in this case has failed to rebut any of Cox's evidence and has failed to

place any evidence of its own on the record to support its position.  Instead, GSA simply

(and erroneously) concluded that Cox had not "described how this [pricing] data reveals any proprietary or commercially confidential information." (Burnett Aff., Ex. H.) GSA then relied for its reasoning and explanation solely on the conclusory statement that, "We have determined that release of the requested records would not cause your company substantial competitive harm." (Burnett Aff., Ex. H.)

Cox provided detailed, clear and well-supported responses to the GSA's March 7 letter, and GSA was obligated to consider and address them reasonably on the record. Like the plaintiff in McDonnell Douglas, Cox explained that the release of its pricing information on government contracts would allow non-government customers to "ratchet-down" their prices through more effective bargaining. See McDonnell Douglas, 180 F.3d at 306. In addition, like in McDonnell Douglas, Cox explained that the release of its pricing information would allow SBC and other competitors to underbid Cox on future GSA contracts. Id. Moreover, Cox provided another compelling justification that was not available to McDonnell Douglas – release of the pricing information would allow SBC and other competitors to underbid Cox for the base-period on the current Contract, because awards were still being made and will continue to be made through the first quarter of 2007.

GSA has utterly failed to provide a sufficient reason for its decision not to withhold the information, or to provide any logical explanation why release of the information would not lead to competitive harm to Cox. At this point, GSA could not provide a "post hoc rationalization" of its decision even if it had one. See AT&T Info Sys., 810 F.2d at 1236. Based on the administrative record that is present, it is clear that GSA did not consider the relevant factors raised by Cox prior to reaching its decision,

and that its decision is not supported by substantial evidence or a "[]logical application of the competitive harm test."  McDonnell Douglas, 180 F.2d at 307.

### (2) GSA's decision to release Cox's confidential pricing information is not in accordance with law.

Cox is highly likely to succeed on the merits for another, independent reason. GSA cannot justify its decision to disclose Cox's pricing information because such disclosure would be in violation of law.

FOIA includes several exemptions that protect information from disclosure, one of which is directly applicable here.  FOIA's Exemption 4 prohibits disclosure of "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. 522(b)(4).  See also Mallinkrodt, 140 F. Supp.2d at 4.  Although FOIA's exemption is permissive in some cases, the Trade Secrets Act, 18 U.S.C. § 1905, the FASA, 41 U.S.C. § 253b(e)(3) and the FARs independently prohibit disclosure of the information covered by FOIA Exemption 4.  See, e.g., 48 C.F.R. §§15.503 and 15.506.  See also McDonnell Douglas, 180 F.3d at 305 ("[W]hen a person can show that information falls within exemption 4, then the government is precluded from releasing it under the Trade Secrets Act.");  Mallinkrodt, 140 F. Supp.2d at 4, 6.

Information is "confidential" for purposes of FOIA Exemption 4 if its release would cause substantial harm to the competitive position of the plaintiff.  See McDonnell Douglas, 180 F.3d at 306 ("If commercial or financial information is likely to cause substantial competitive harm if released, that is the end of the matter, for the disclosure would violate the Trade Secrets Act.");  National Parks & Conservation Ass'n v. Morton, 498 F.2d 765 (D.C. Cir. 1974).  See also MCI Worldcom, Inc. v. General Services Admin., 163 F.Supp.2d 28, 35 (D. D.C. 2001).  The information at issue here plainly

would cause substantial competitive harm to Cox if released.  Therefore, it is confidential business and financial information covered by FOIA Exemption 4, and its disclosure would be contrary to law.  See Id.

      a.     Release of Cox's Confidential Pricing Information Would Cause Cox Substantial Competitive Harm.

As previously explained to GSA in Cox's March 7, 2006 letter, the information GSA plans to disclose to SBC would place Cox at a significant competitive disadvantage if released for at least three reasons.  First, the Oklahoma Service Contract at issue provides for awards of services to federal agencies to take place between the second quarter of 2006 and the first quarter of 2007.  (Burnett Aff. at ¶8.)  Over the course of the Award Period, any Offeror may lower its prices under the Contract, thereby improving its competitive position for any federal agency awards that had not been made.  (Burnett Aff. at ¶13-15.)  At the expiration of the two-year base period under the contract, GSA has three one-year options that it may exercise.  (Burnett Aff. at ¶12.)  GSA may award the option years to the lowest bidder under the Contract.  If SBC knows Cox's pricing methodology and its base year prices, SBC will be able to underbid Cox for the option years under the Contract.  (Burnett Aff. at ¶13.)

Second, as the Courts recognized in McDonnell Douglas and MCI Worldcom, it is unfair to make pricing information publicly available because non-governemental customers would be able to use the information contained in the bids to more effectively bargain down the cost of such services.  See McDonnell Douglas, 180 F.3d at 306; MCI Worldcom, 163 F.Supp.2d at 35. This ratchet-down effect would place Cox at a

competitive disadvantage to competitors who were not involved in the competitive

bidding process, as well as to SBC if its pricing information was not likewise disclosed.

Third, Cox would suffer substantial competitive harm in the bidding for future

GSA contracts if its pricing methodology and specific prices under the Contract were

known to Cox's competitors.  GSA already intends to open similar bidding on similar

services to federal agencies in other markets, including the Arizona, California, Louisiana

and Kansas markets.  (Burnett Aff. at ¶35(c).)  Giving SBC (or other Cox competitors)

access to Cox's pricing methodology and specific prices under the Oklahoma Services

Contract would allow Cox's competitors to more easily underbid Cox or force Cox to

change its pricing strategy.

b.      GSA's Statement That Release of the Confidential Pricing
        Information Would not Result in Substantial Competitive Harm is
        Unsupportable.

In its March 7, 2006 letter to GSA, Cox fully articulated the competitive

disadvantage that it would face if its confidential pricing information were disclosed to its

major competitor, SBC.  Nevertheless, without explanation or rebuttal of the points raised

by Cox, GSA stated in its March 31, 2006 response that Cox never "described how the

data reveals any proprietary or commercially confidential information."[3]  GSA merely

stated in conclusory fashion that, "We have determined that release of this information

would not cause your company substantial competitive harm."  GSA's letter then stated

that, "The determination is based on a U.S. court decision dated September 7, 2001,

---

[3]      This is inconsistent with GSA's explicit recognition of the confidential and
proprietary nature of the Contract pricing schedules indicated by GSA stamping in bold
print at the bottom of each page of the pricing schedules, "**Proprietary not to be
disclosed outside the Government**."

between Sprint Communications Company and GSA that established the precedence [sic] to release the first year pricing of our telecommunications [sic] contracts of which GSA is currently following."

The case referenced in GSA's letter, MCI Worldcom Inc. v. GSA, 163 F. Supp.2d 28 (D. D.C. 2001), provides no support for GSA's decision to release Cox's pricing information. In fact, the MCI Worldcom opinion directly and completely supports Cox's position that the information in the present case cannot be disclosed by GSA.

In MCI Worldcom, the plaintiffs brought a reverse FOIA action to prevent the disclosure of information nearly identical to the information GSA plans to disclose here. See MCI Worldcom, 163 F. Supp.2d at 30-31. MCI Worldcom had entered into an eight-year contract to provide long distance telecommunications services to various federal agencies. Id. at 30. In the second year of the contract, GSA announced to MCI Worldcom that it would be releasing "all contract unit prices contained in the [] Contract." Id. GSA relied on the language of FAR §§15.503(b)(1) and 15.506(d)(2), which provide for the disclosure of unit pricing to "unsuccessful offerors" where such information does not constitute FOIA Exemption 4 confidential information.

In rejecting GSA's position, the court explained that the FARs do not authorize the disclosure of unit pricing if such pricing constitutes FOIA Exemption 4 confidential information. In addition, the court went on to hold that the pricing information at issue, which is the same type of pricing information at issue in this case, did constitute FOIA Exemption 4 confidential information. In reasoning identical to Cox's reasoning here, the court stated:

> First and foremost, this Circuit has held that line-item pricing information similar to that at issue here is exactly the type of

information that constitutes "confidential commercial or financial information," and is not disclosable in response to a FOIA request.

*** 

[D]isclosure of detailed pricing data…submitted in anticipation of being awarded a federal contract would result in "substantial competitive harm" because it would permit underbidding by competitors and encourage non-governmental customers to "ratchet-down" prices.

MCI Worldcom, 163 F. Supp.2d at 30-31 (emphasis added) (citing McDonnell Douglas, 180 F.3d 303).[4]  The court likewise held that the release of such information by GSA would violate the Trade Secrets Act.  Id. at 37.

The decision in MCI Worldcom and its underlying reasoning are on all fours with this case.  The pricing information is virtually identical and is plainly confidential; its disclosure would cause substantial competitive harm.  See MCI Worldcom, 163 F.Supp.2d at 36.  Indeed, disclosure here would cause greater harm than disclosure in MCI Worldcom, because current-year bidding under the instant Contract is on-going.  Accordingly, the information falls squarely within FOIA Exemption 4 (as it did in MCI Worldcom), and the FARs (§§ 15.503 and 15.506), the FASA, 41 U.S.C. § 253b(e)(3),

---

[4]    GSA's assertion that the MCI Worldcom opinion somehow provides precedent for GSA's decision to provide first-year pricing is both incorrect and irrelevant.  GSA's position is incorrect because the MCI Worldcom court merely referred to GSA's prior policy of releasing current year pricing information and did not provide any opinion regarding the propriety of disclosing such information.  163 F.Supp. 2d at 30, n.2.  As the court stated in response to NASA's argument that it had a long policy of disclosing such information in McDonnell Douglas, "That is of no moment."  180 F.3d at 306.

GSA's position is irrelevant because: (1) the information at issue in this case is substantially different, because there is competitive bidding based on current year prices under the contract and awards are being provided through the first quarter of 2007; and (2) GSA has proposed releasing all of Cox's confidential pricing information, not just the current year pricing.

the Trade Secrets Act, 18 U.S.C. § 1905, and the decision in <u>MCI Worldcom</u> prohibit

GSA from making the planned disclosure.

**B.    Cox Will be Immediately and Irreparably Harmed if a Temporary Restraining Order is not Granted.**

Because confidential information, once released outside the government, loses its

confidential status, courts have held that the disclosure of such information would

constitute irreparable harm requiring injunctive relief.  <u>See</u> <u>Metro. Life Ins. Co. v. Usery</u>,

426 F.Supp. 150, 172 (D. D.C. 1976).  The <u>Usery</u> court stated:

> The disclosure of those portions of the documents containing exempt information would irreparably injure the [submitting company].

<u>Id</u>.  The disclosure of Cox's confidential pricing information to SBC presents the classic

example of a bell that cannot be "unrung."

With respect to SBC, the disclosure of Cox's confidential pricing information

would result in the loss of confidentiality.  Once disclosed to SBC, Cox's confidential

pricing information could be made available to the public.  This injury would be

immediate, because Cox SBC and others continue to bid on, and compete for, initial

awards and options under this Contract.  Unless this Court grants a preliminary

injunction, the confidentiality of this information would be lost before this matter could

be finally adjudicated on the merits.  The Court should place great weight on the

significant and irreparable harm that will result absent the issuance of a preliminary

injunction.

**C.  No Harm Will Result to the Government or Other Parties by Delaying
Disclosure of Cox's Confidential Pricing Information.**

The government and other parties have no interest in the immediate public
availability of Cox's pricing information.  In contrast to Cox, which would be
immediately and irreparably harmed by the release of this information, there would be no
harm to GSA or other parties if the disclosure of this information was delayed until this
issue is fully litigated before this Court.  GSA has never released this information before,
and, indeed, was prohibited from making a similar disclosure in MCI Worldcom in 2001.
Absent SBC's FOIA request, GSA would have no lawful basis upon which to this
information publicly available on its own.  GSA has no grounds to claim any harm
arising from a preliminary injunction.

SBC also would not suffer any legitimate harm as a result of delaying the
disclosure of this information for at least two reasons.  First, SBC has no legitimate
interest in obtaining or using Cox's confidential pricing information.  The bidding
process under the Contract is governed by the FARs and require that pricing information
be kept confidential while competitive bidding is in progress.  SBC has no basis for
obtaining such information.  Frankly, SBC's attempt to circumvent the sealed bid process
through FOIA is surprising, especially given the clear decision in MCI Worldcom.  The
only reason SBC might desire this information would be to underbid Cox by the lowest
amount necessary, a clearly anti-competitive purpose, and this Court should not
recognize any harm that might result to SBC as a result of its inability to take part in anti-
competitive activities.

Second, SBC has waited nearly four months for the requested pricing information,
and a further delay to review the propriety of a disclosure that cannot be undone cannot

possibly harm SBC.  SBC is not at any competitive disadvantage as a result of not having this information, and thus it will not be harmed by postponing the release of this information until such time as there is a final adjudication of this matter.

      **D.**      **The Public Will Benefit From Delaying Disclosure of Cox's**
              **Confidential Pricing Information.**

The public interest is best served by a government contract bidding process that is fair and competitive.  This public interest in protecting confidential business information is recognized and codified in FOIA Exemption 4, the FASA, the FARs and the Trade Secrets Act, all of which forbid disclosure of confidential business information provided pursuant to confidential bidding.  The public interest also would be harmed by disclosing Cox's pricing information to SBC, because such information would allow SBC to engage in anticompetitive bidding.  If SBC knows Cox's confidential pricing information, SBC would be able to determine the exact amount by which it would need to lower its prices in order to underbid Cox.  This type of anti-competitive pricing would allow SBC to reduce its prices by the minimum amount necessary to underbid Cox, and would thereby reduce the public benefit created by a sealed, confidential bidding process.

The federal government has established a sealed bidding process for awards under the FARs, and neither SBC nor GSA can repeal that.  Releasing Cox's confidential pricing information to SBC would violate the rules established to protect the public and its bidding process.  Indeed, allowing parties to "unseal" the bids of their competitors would trigger a series of requests, resulting in an anti-competitive "racheting down" of prices.  This race to the bottom would ultimately lead competitors to exit the market as prices are driven down below each company's cost margin, resulting in a dearth of competition under the present Contract and under future contracts.  In the end, the public

interest is best served by protecting the process the government established in the first place and retaining the confidentiality of Contract pricing. This preserves active competition in the form of sealed bids and is fair to all competitors.

## II.    Cox Should not be Required to Post a Bond.

Fed. R. Civ. P. 65(c) provides that security may be required of the party awarded injunctive relief in an amount sufficient to cover any costs and damages of a party that is found to be wrongfully restrained. In this case, GSA will not be harmed if the preliminary injunction is later determined to have been improvidently granted. The preliminary injunction in this case would merely maintain the status quo until this Court has an opportunity to resolve the merits of this dispute. Accordingly, this Court should not require Cox to post any bond upon issuance of a preliminary injunction.

## CONCLUSION

For all of the reasons set forth herein, Cox respectfully requests that this Court grant Cox's motion for a preliminary injunction.

Dated: April 14, 2006                              Respectfully submitted,

                                                   _____/s/_____
                                                   David E. Mills
                                                   (D.C. Bar No. 401979)
                                                   W. Bradley Ney
                                                   (D.C. Bar No. 486363)
                                                   (D. D.C. Bar Application Pending)
                                                   DOW LOHNES & ALBERTSON, PLLC
                                                   1200 New Hampshire Ave., N.W.
                                                   Suite 800
                                                   Washington, DC 20036
                                                   Telephone: (202) 776-2000
                                                   Facsimile: (202) 776-2222
                                                   Counsel for Plaintiff
                                                   Cox Oklahoma TeleCom, LLC